IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELISSA LAMBERT MASON ) | |
| and ALLEN MASON, ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-00245 |
| ) | Magistrate Judge Frensley |
| UNITED STATES OF AMERICA, ) | |
|     Defendant. ) | |

## MEMORANDUM AND ORDER

### I.    INTRODUCTION AND BACKGROUND

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant, The United States of America. Docket No. 33. In support of its Motion, Defendant contemporaneously filed a Memorandum (Docket No. 34), a transcript of the deposition of Plaintiff Melissa Mason ("Mrs. Mason") (Docket No. 34-1) and a Statement of Facts (Docket No. 35). Defendant later supplemented its Motion (Docket No. 41). Plaintiffs, Allen Mason ("Mr. Mason") and Mrs. Mason, filed a Response in Opposition to Defendant's Motion (Docket No. 43) and a Memorandum in support (Docket No. 44), along with a Response to Defendant's Statement of Undisputed Facts" (Docket No. 45), a "Concise Statement of Additional Facts" (Docket No. 46), and Affidavits of both Mrs. and Mr. Mason (Docket Nos. 47-48). Subsequently, Defendant filed a "Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment" (Docket No. 49-1), which includes an additional motion to strike a portion of Mrs. Mason's Affidavit (Docket No. 47), as well as a "Reply to Plaintiffs' Response to Defendant's Statement of Undisputed Facts" (Docket No. 50) and a "Response to Plaintiffs' Concise Statement of Additional Facts" (Docket No. 51). Plaintiffs filed a Sur-Reply in Opposition to Defendant's Motion (Docket

No. 55).

Plaintiffs filed this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, alleging, *inter alia*, that Defendant negligently maintained the concrete walkway outside its Post Office in Lebanon, Tennessee. Docket No. 1, pp. 5-7. Mrs. Mason claims that while she was walking out of the Post Office, she fell after stepping into a portion of the walkway where the concrete had disintegrated or broken, suffering "severe and permanent injuries…including injuries to her ankle, leg, knee, back, wrist and hip." *Id.* at 4. She alleges the walkway had been in a state of disrepair for a sufficient length of time that the Post Office knew or should have known of its dangerous condition. *Id*. Mrs. Mason now seeks $1,000,000 in compensatory damages for "medical bills…physical and mental pain, anguish and suffering and loss of enjoyment of living," as well as her expected future expenses and suffering resulting from her injuries. *Id.* at 7-8.

Mr. Mason claims that, as a result of Mrs. Mason's injuries, he has suffered loss of consortium. *Id*. at 8. Mr. Mason seeks $100,000 in compensatory damages for losing "the services, companionship, support, assistance, society, comfort, happiness, and consortium of his wife," as well as his "loss of earnings and/or earning capacity" and inability to advance his career during the time spent caring for his wife. *Id.* at 7-8.

Defendant seeks summary judgment on Mrs. Mason's negligence claim and Mr. Mason's loss of consortium claim. Docket Nos. 34, 41. For the reasons discussed below, the undersigned finds that, with regards to Mrs. Mason's claim there are genuine issues of material fact. However, the Court finds that there are no genuine issues of material facts with regards to Mr. Mason's loss of consortium claim and that Defendant is entitled to summary judgment as a matter of law. Accordingly, the Defendant's Motion for Summary Judgment (Docket No. 34) is **GRANTED** in part and **DENIED** in part**.**

## II.     UNDISPUTED FACTS [1]

Mrs. Mason[2] drove to the United States Post Office located on 226 East Gay Street, Lebanon, Tennessee around noon on August 31, 2016. Docket No. 34-1, p. 64; Docket No. 9, pp. 2-3. Mrs. Mason was accompanied by her son and daughter-in-law. Docket No. 44-1, p. 66. At the time, Mrs. Mason had been taking the following medications: Gabapentin for pain in her back and neck; Klonopin daily for anxiety; omeprazole for a stomach ailment; oxycodone periodically for chronic pain; and Promethazine for the nausea resulting from oxycodone use. Docket No. 34-1, pp. 34-37. Although she had taken her medications the previous night, Mrs. Mason had not taken any the morning of her visit to the Post Office but nonetheless recalls "feeling good." *Id.* at 69. Mrs. Mason also recounts she went to Lebanon "in a rush" and "wanted to get back home." *Id.* at 65.

Mrs. Mason entered the Post Office with her son and stamped a paper. *Id.* at 69. Approximately five to ten minutes later, Mrs. Mason exited with her son walking in front of her at arm's reach or slightly further. *Id.* at 69-70. As Mrs. Mason followed behind her son "trying to keep up with him," she stepped into a depression in the concrete slightly less than an inch deep with her left foot. *Id.* at 69, 72; Docket No. 34-2, p. 2. Her son, who was ahead of her and "to the left a little bit," did not step into the depression. Docket No. 34-1, p. 73. When Mrs. Mason stepped into the depression, her left ankle turned and "folded," causing her to suddenly fall forward. *Id.* at 72. Mrs. Mason stuck out her right hand to break the fall but still hit the ground "very hard" with her left knee and one shoulder, injuring her hip from the way she fell. *Id.* at 71-72, 75-76. A member of the local fire department helped Mrs. Mason to her car, where she opted

---

[1] Unless otherwise noted, the following facts are in a form required by Fed R. Civ. P. 56, and are undisputed.
[2] Although Plaintiff Melissa Mason is referred to hereinafter as "Mrs. Mason," she had not yet married Allen Mason, her current husband, at the time of her injury on August 31, 2016.

3

to take an ambulance to a nearby hospital. *Id.* at 81-82. The hospital discharged Mrs. Mason after finding she had abrasion to the left knee and a contusion to the left hand and ankle.[3] Docket No. 34-2, p. 3. Mrs. Mason testified that since the fall, she has gotten surgery for her wrist, her ankle, and her knee. Docket No. 34-1, p. 74-75. In addition, she claims she has experienced worsening back pain due to an "arachnoid web injury" near the "thoracic area" of her spine. *Id* at 74.

On September 6, 2016, a Post Office employee submitted an Eastern FSO Response Line FSSP Problem Work Sheet, stating:

> Last week a customer tripped and fell, an accident report was taken and she was transported by ambulance to the hospital. She fell in front of the Post Office where repairs are as follows: The large concrete area in front of the Post Office has numerous cracks and areas where the concrete has fallen away and is in dire need of resurfacing.

Docket No. 44-2, Ex. 1.

Two days later, another Problem Work Sheet was submitted which stated: "Concrete sidewalk is spalling and is in disrepair. Loose gravel poses a trip hazard. Resurface sidewalk with an epoxy grout. [Approximately] 1000 [square feet]." Docket No. 44-2, Ex. 2. The Post Office custodian, who is responsible for "anything to do with safety," testified that the concrete walkway deteriorates over time and that unspecified portions of "the sidewalk" had been repaired twice before at unspecified times. Docket No. 44-4, p. 5-7. However, the custodian stated that he had not noticed the deterioration in the location where Mrs. Mason fell before the incident. Docket No. 49-2, p. 17. One Problem Work Sheet had been submitted in 2013 to the Post Office requesting repairs for the concrete "that is broken up into chunks causing a safety issue" but never specifying the area in issue. Docket No. 44-3; *id.* at 56-58, 89. Prior to Mrs. Mason's fall, the custodian was

---

[3] It is undisputed that these injuries were the ones documented by the Wilson County Medical Emergency Agency, the agency that treated Mrs. Mason immediately after her fall. Plaintiff disputes, however, that these are all of the injuries Mrs. Mason incurred as a result of the fall.

4

aware other people had fallen on parts of the walkway. *Id.* at 86. The labor custodian testified he did not believe any of the previous falls occurred in the same spot where Mrs. Mason fell. *Id*. at 55.

Two months after the fall, on November 11, 2016, Melissa Mason married Allen Mason. Docket No. 48, p. 1. The two were together for almost five years before they married. *Id*. At the time of the accident, the marriage date was set, and invitations had already been sent. *Id*.

### III.     LAW AND ANALYSIS

#### A.     Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth

specific facts showing that there is a genuine issue for trial. However, if a nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

### B.     Negligence

In order to prevail on a claim of negligence liability, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant below the appliable standard of care such that it amounts to breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate cause. *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 734 (Tenn. Ct. App. 2018). Tennessee state law provides the same basic elements for premises liability as it does for negligence. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

#### i.     Duty Generally

The question of duty is one of law[4] in which the court must determine whether the plaintiff's interest was entitled to legal protection at the hands of the defendant. *Rice*, 979 S.W.2d at 308. In cases of premises liability, the premises owner has a duty to exercise reasonable care under the circumstances to protect people lawfully on the premises from unreasonable risks of harm. *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883 (Tenn. Ct. App. 2000); *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999). However, courts have declined to impose a legal duty in two

---

[4] Because duty is a question of law, an issue of whether a duty existed does not present a triable issue of material fact. *Schaffer v. A.O. Smith Harvestore Prods., Inc.*, 74 F.3d 722, 729 (6th Cir. 1996).

6

cases: first, when no unreasonable risk is anticipated from the condition, and second, where the condition was never discovered, nor would have been discovered through exercise of reasonable care, by the premises owner. *Rice*, 979 S.W.2d at 309.

A risk is "unreasonable" such that it "gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). The factors for determining whether a risk is unreasonable are:

> The foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Id.* The Court must engage in a balancing test using these factors, in addition to others discussed below, to determine whether the foreseeability and gravity of the harm outweighs the burden imposed by preventing the harm. *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998).

### ii. Open and Obvious Rule and Comparative Fault

A premises owner typically has a duty to remove or warn against latent or hidden dangers on the premises which the premises owner was or should have been aware of through the exercise of reasonable diligence. *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994). However, this duty does not grant invitees or licensees carte blanche to enter areas of obvious danger and harm themselves at a premises owner's expense. When a danger is "obvious, reasonably apparent, or as well known" to the premises owner as to the licensee or invitee, the premises owner has no duty to warn them of the danger. *Coln*, 966 S. W. 2d at 40.

7

The Tennessee Supreme Court adopted a "modified" comparative fault scheme for negligence claims in *McIntyre*, allowing plaintiffs to recover "so long as a plaintiff's negligence remains less than the defendant's." *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). Thereafter, courts split on whether the 'open and obvious' rule remained good law or was subsumed into the comparative fault analysis. *See, e.g., Boyle v. City of Knoxville*, No. 03A019505-cv-00166, 1995 WL 511904, at *4 (Tenn. Ct. App. Aug. 30, 1995).

Six years later in *Coln*, the Tennessee Supreme Court resolved the split. 966 S.W.2d at 42. The result was an incorporation of the Restatement (Second) of Torts, § 343A considerations of obviousness of dangers into both the overall balancing test for unreasonableness of risk discussed in *McCall* and a plaintiff's comparative fault, but an end to the open and obvious rule as a preclusion from recovery for a plaintiff. *Coln*, 966 S. W. 2d at 42. Ultimately, the Tennessee Supreme Court held:

> if the foreseeability and gravity of harm posed from a defendant's conduct, even if 'open and obvious,' outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care. The circumstances of the case are then analyzed under comparative fault.

*Id.* at 43. The Court may therefore consider factors such as whether the risk was obvious to a person exercising reasonable perception, intelligence, and judgment in answering the question of whether a danger posed such a foreseeable, grave risk that the danger gave rise to a duty to remove or warn against it. *Id*.

### C. Sham Affidavit Doctrine

The Sixth Circuit adopted the Sham Affidavit Doctrine in *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984), quoting the Second Circuit:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his

8

> [or her] own prior testimony, this would greatly diminish the utility
> of summary judgment as a procedure for screening out sham issues
> of fact.

*Perma Research & Development Co. v. Singer Co.*, 410 F. 2d 572, 578 (2d Cir. 1969).

The Sixth Circuit has since only applied the Sham Affidavit Doctrine in two kinds of cases. First, the rule applies where an affidavit "directly contradicts" the witness's deposition testimony. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006); *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453 (6th Cir. 1986); *Penny v. United Parcel Service*, 128 F.3d 408 (6th Cir. 1997); *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614 (6th Cir. 2001). In these cases, the affidavit will be stricken unless the party offering the affidavit "provide[s] a persuasive justification for the contradiction." *Aerel*, 448 F. 3d at 908. Second, the rule applies where no direct contradiction exists, but the Court determines the affidavit is attempting to create a sham issue of fact. *Id.* The factors for determining when an affidavit attempts to create a sham fact issue include:

> whether the affiant was cross-examined during his earlier testimony,
> whether the affiant had access to the pertinent evidence at the time
> of his earlier testimony or whether the affidavit was based on newly
> discovered evidence, and whether the earlier testimony reflects
> confusion the affidavit attempts to explain.

*Id.*, citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

In these cases, the presumption is reversed: the affidavit will not be stricken "unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Aerel*, 448 F. 3d at 908 (internal citations omitted).

Importantly, in cases where a witness is not asked about an event, or only asked general questions, the witness is under no obligation to volunteer all the details of the event and his or her failure to do so may not be used to invoke the Sham Affidavit Doctrine. *Briggs v. Potter*, 463 F.3d

9

507, 513 (6th Cir. 2006); *Crawford v. Chipotle*, 773 F. App'x 822, 826 (6th Cir. 2019).

### D.     Case at Bar

Defendant makes four arguments. First, Defendant argues that it owed no duty to Mrs. Mason because the depression on the concrete walkway outside the Post Office was not an unreasonable risk. Docket No. 34, p. 14. Second, evidence that Mrs. Mason was exercising due care while walking on Defendant's walkway should be stricken under the Sham Affidavit Doctrine. Docket No. 49-1, p. 2. Third, granting Defendant's Motion for Summary Judgment on Mrs. Mason's negligence claim would necessarily require granting summary judgment on Mr. Mason's loss of consortium claim because loss of consortium is premised on an underlying tort for which the Defendant is responsible. Docket No. 41, pp. 1-2. Fourth, even if the Court denies Defendant's Motion for Summary Judgment on Mrs. Mason's negligence claim, Mr. Mason's loss of consortium claim still fails because he was not married to Mrs. Mason at the time of the fall. *Id.* at 2.

Plaintiffs raise four arguments in response. First, Plaintiffs argue that the question of whether the condition of the concrete walkway was so dangerous that Defendant had a duty to warn about or repair it is a question of fact inappropriate for summary judgment. Docket No. 44, p. 10. Second, Defendant owed Mrs. Mason a duty of care either to warn her or repair the walkway because the depression in the concrete walkway was an unreasonable risk that Defendant knew about or should have known about. *Id.* Third, Mrs. Mason's Affidavit supporting that claim should not be stricken because her Affidavit neither directly contradicts her deposition nor creates a sham fact issue. Docket No. 55, p. 3. Fourth, Mr. Mason is entitled to a loss of consortium claim as a matter of law because he seeks compensation for the loss of a happy marital life from the moment of the marriage onward. Docket No. 44, p. 20.

### i. Melissa Mason's Negligence Claim

As a threshold matter, the question of whether a duty exists is a question of law. *Coln*, 966 S. W. 2d at 44. Thus, it is appropriate for the Court to determine whether Defendant owed a duty to Mrs. Mason and, if not, find Defendant entitled to judgment as a matter of law. *See id.* Plaintiffs' argument that summary judgment is inappropriate fails.

Making that determination, however, is the more daunting matter. The applicable standard is whether "foreseeable probability and gravity of harm" generated by the deteriorated sidewalk was greater than "the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W. 2d 150, 153 (Tenn. 1995). In determining foreseeability and gravity of harm of a condition on land, the Court must factor how obviously the condition posed a danger to an invitee exercising reasonable perception, intelligence, and judgment. *See Coln*, 966 S. W. 2d at 43.

Viewing the facts in the light most favorable to the Plaintiffs, the Court reasons the deterioration in the walkway should have been discovered by Defendant through reasonable care. A reasonable premises owner would have noticed the deterioration given its size and location. Docket No. 34, p. 4. But here's the rub: noticeability cuts both ways. If the deterioration is obvious, then the premises owner should not be expected to shoulder as heavy a burden to repair the condition or warn pedestrians about it because the owner would believe, as this Defendant likely did, any reasonable pedestrian would easily spot it and walk around it. However, this obviousness then makes the premises owner's failure to repair or warn about the condition appear especially egregious because such a clearly defective condition should have been remedied already. This leads to an endless downward spiral of shifting blame: Defendant argues the sidewalk's condition was obvious so Plaintiff should have avoided it, while Plaintiff argues back

11

that it was so obvious that Defendant should have seen and fixed it, back and forth into perpetuity with both sides simultaneously helped and harmed by the obviousness of the condition.

The Court could wax poetic analogizing the plethora of case law provided by the parties to the facts presented, but as Chief Judge Crenshaw eloquently stated:

> [G]iven that this case is set for a bench trial…and the Court is writing only for the benefit of the parties at this point…it need not spill nearly as much ink resolving the pending motions for summary judgment. Consequently, district courts are not required "to write elaborate essays using talismanic phrase," *Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014), particularly when they are denying summary judgment. *See also United States v. Massachusetts*, 781 F. Supp. 2d 1, 19–20 (D. Mass. 2011). What "is required is a record sufficient to allow an informed appellate review," *id.*, and in most cases "a district court's determination that there exists a triable issue of fact cannot be appealed on an interlocutory basis." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006).

*Capitani v. World of Miniature Bears, Inc.*, No. 3:19-cv-00120, 2020 WL 4805729, at *1 (M.D. Tenn. Aug 18, 2020).

The circumstances of the case, similar to those stated above, make it tempting to flesh out the argument on both sides and settle the matter here.[5] However, the very fact that the Court would have to flesh out argument on both sides is evidence that summary judgment is improper. The Court must hold to the fundamental principle that forms the foundation for summary judgment: every plaintiff with a genuine, triable issue deserves his or her day in court.

Following the principles expressed in *Capitani*, the Court thus finds it sufficient to state that Defendant owed Plaintiff a duty, but there remains a genuine issue of material fact as to whether Defendant breached that duty and whether Plaintiff's comparative fault is great enough to preclude recovery. "Where the record taken as a whole *could not* lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S.

---

[5] This case is set for a bench trial before the undersigned. Docket No. 13, p. 1; Docket No. 15.

12

Case 3:20-cv-00245   Document 56   Filed 07/20/22   Page 12 of 20 PageID #: 493

557, 586 (2009) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)) (emphasis added). A rational trier of fact presented with the record as a whole could find, given how easily Defendant could have engaged in alternate conduct such as placing a sign, or Defendant's admission post-hoc in its internal service reports that the condition was a "safety issue," that Defendant is more-than-not at fault. Docket No. 44-3, p. 1. Accordingly, Defendant's Motion for Summary Judgment fails.[6]

### ii. Sham Affidavit Doctrine

Defendant additionally raises the issue that Mrs. Masons' Affidavit (Docket No. 47) violates the Sham Affidavit doctrine. Specifically, Defendant asserts that Mrs. Mason's statement in Paragraph 4 substantially contradicts her prior sworn deposition testimony in "an obvious attempt to cure her sworn testimony" and "attempt a 'do-over'" to paint a more favorable picture of the circumstances surrounding her fall. Docket No. 49-1, pp. 1-3.

Plaintiff responds that "[h]er testimony [in her deposition] that she was in a rush or that she was walking to keep up with her son does not contradict her testimony in her affidavit regarding *how* she was walking and that she was paying attention to her surroundings" and that the two are "clearly *not* in contradiction with one another." Docket No. 55, p. 2. The distinction Plaintiff draws that being "in a rush" is a temporal description about one's schedule for the day and not necessarily a physical description about the manner in which one is moving. *Id.* Plaintiff further notes that Defendant's claim that the two statements stand in contradiction is only its own self-serving inference, and that Defendant could have uncovered this distinction during cross-examination at Mrs. Mason's deposition but failed to do so. *Id.*

Paragraph 4 of Mrs. Mason's Affidavit, filed after Defendant's Motion for Summary

---

[6] This should not be construed as an endorsement of Plaintiff's theory of the case. The Court is currently deciding on Defendant's Motion for Summary Judgment and accordingly must ask whether Plaintiff could ever prevail.

13

Judgment, states:

> [a]lthough I was in a rush to get a letter to the Post Office before noon and wanted to get back home, I was not walking hurriedly as I left the Post Office. I was paying attention to my surroundings and was walking in my normal fashion.

Docket No. 47, p. 1.

Defendant contends the above language directly contradicts with the testimony Mrs. Mason gave in her deposition:

> Mrs. Mason not only testified that she was in such a "hurry to get to the post office" that she did not take her medicine and had "rushed out of the house," but also that, in leaving the Post Office, she was "in a rush because I wanted to get back home." Further, contrary to her affidavit statement now that she was "walking in my normal fashion," she testified at her deposition that she was following behind her son and "trying to keep up with him," and "was doing good," because "he's got long legs" and "walks fast."

Docket No. 49-1, p. 2 (citations omitted).

The Court first must determine whether a contradiction exists. *See Aerel*, 448 F. 3d at 908. The Court finds that one does, albeit slight. Mrs. Mason speaks only generally to the fact she was "in a rush" with regards to leaving her house and wanting to get back home before lunch. Docket No. 34-1, pp. 20, 24. Defendant overstates its case by claiming that this testimony directly contradicts the claim in Mrs. Mason's Affidavit that she "was not walking hurriedly." Docket No. 47, p. 1. The Court agrees with Mrs. Mason that one could, at least in theory, be acting under a time crunch without necessarily acting recklessly or absent-mindedly. Mrs. Mason's testimony that she was "following" and "trying to keep up with [her son]" who "walks fast," stands more starkly in contrast to the statement in her affidavit that she was "walking in [her] normal fashion." *Id*; Docket No. 34-1, pp. 24-25. On this issue, the Court finds there is some contradiction between the two statements.

14

Having found there is a contradiction present, the next inquiry is whether the contradiction is direct. *See Aerel*, 448 F. 3d at 908. This Court finds it is not, and that Mrs. Mason is more likely attempting "to 'supplement[]' potentially ambiguous or incomplete testimony" than she is creating a faux fact issue. *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 843 (6th Cir. 2021) (citing *Aerel*, 448 F. 3d at 908). Mrs. Mason testified to aspects of how she was walking, which, taken together, could be taken to mean she was walking hurriedly and not paying attention to her surroundings.[7] *See* Docket No. 49-1, p. 3. However, Mrs. Mason never actually testified to that conclusion.

Furthermore, Defendant's statement of the rationale for the doctrine backfires, as Mrs. Mason was certainly not "examined *at length* [under oath]" on the way she was walking out of the Post Office. *Id.* (emphasis added); *see* Docket No. 34-1, pp. 6, 8. A similar controversy arose in *Crawford*, where the plaintiff never mentioned a crucial conversation that included a complaint to her former employer about discriminatory behavior, which was the subject of the lawsuit, during her deposition but did mention it in a declaration filed after the employer moved for summary judgment. 773 F. App'x at 826. The Sixth Circuit denied the employer's motion to strike the plaintiff's declaration under the Sham Affidavit doctrine, reasoning the defendant's questions during the deposition

> were simply not focused enough for [the defendant] to now invoke the [S]ham [A]ffidavit doctrine. In fact, even in a case where a deponent "was questioned generally" about a specific conversation, we allowed a later affidavit adding additional information because "he was not expressly asked" what had been said in the conversation, and so "was not under any obligation to volunteer everything…said."

*Id.,* quoting *Briggs*, 463 F.3d at 513.

---

[7] Defendant, as evidenced by its Reply, does take her testimony to mean this. *See* Docket No. 50.

Likewise, Mrs. Mason was *never* asked by Defendant whether she was paying attention to her surroundings, whether she was walking at a certain pace, or how she was walking at all. At every point in Mrs. Mason's deposition where Defendant now contends she admitted to "rushing" or otherwise walking negligently, Mrs. Mason included the description offhandedly and Defendant's next question was entirely unrelated. Thus, it appears to the Court that the following is an accurate description of the matter: Mrs. Mason recollected she was in a rush to get to the Post Office; she testified accordingly in an attempt to be honest about her fall; Defendant neglected to clarify the issue; Defendant used Mrs. Mason's vagueness to its advantage in its Memorandum in Support of its Motion for Summary Judgment (Docket No. 34-1); Mrs. Mason and her counsel read the Memorandum and realized her testimony was unintentionally detrimental to her case and decided to submit an affidavit to clarify her position; and now, Defendant asks this Court to exclude Mrs. Mason's more accurate description of events to benefit its case. The Court declines to do so. The interests of justice demand that this case's outcome be determined by truth, not technicalities. Defendant's concern is a matter of what weight and credibility to afford Mrs. Mason's affidavit, not its admissibility. Any inherent contradiction between Mrs. Mason's deposition testimony and her Affidavit will speak for itself.

      iii.      **Allen Mason's Loss of Consortium Claim**

Mr. Mason essentially argues that Tennessee law enabling loss of consortium claims should be expanded to allow for recovery when one is injured at a time when a marriage has been planned but not yet certified. Docket No. 44, pp. 19-22. When weighing an argument for a particular statutory interpretation, the Court must first scrutinize the statutory language. *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 373 (6th Cir. 2019) (citing *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)). Tennessee law grants a "right to recover for loss of consortium…in cases where such

damages are proved by a spouse." Tenn. Code Ann § 25-1-106. This language does not provide any insight, as whether the spouse proved damages does not have anything to do with when he or she became a spouse. Thus, the Court must turn to relevant case law interpreting this statute and others like it.

Though the case law on this issue is sparse, Tennessee state courts have previously denied loss of consortium claims because the spouses "were not married at the time of the accident." *Eisenhardt v. Ramsey*, No. 03A01-9411-CV-00412, 1995 WL 358062 (Tenn. Ct. App. Jun. 13, 1995).[8] Other courts within and without of the Sixth Circuit have also grappled with this same issue and ruled similarly. *See, e.g., Bransteter v. Moore*, 579 F. Supp. 2d 982, 984 (N.D. Ohio 2008). In *Bransteter*, the district court stated the three traditional policies that support reserving loss of consortium claims only when the injury occurs during marriage: "First, a person should not be allowed to marry a cause of action. Second, a spouse assumes the risk of pre-marital injuries upon marriage. And third, a contrary rule would lead to a regime of near-unlimited liability. *See Stager v. Schneider*, 494 A.2d 1307, 1315–16 (D.C. 1985)." 579 F. Supp. 2d at 984. The number of reported cases nationwide that break from this consensus have no binding authority over this Court.[9]

---

[8] This Court positively referenced *Eisenhardt* in deciding *Becker v. Judd*, using it as support for the proposition that only a spouse may assert a loss of consortium claim. 646 F. Supp. 2d 923, 924 (M.D. Tenn. 2009).

[9] By the account provided in *Stager v. Schneider*, only two reported cases have held that the existence of a "lawful marital relationship at the time of the tortious conduct" was not necessary for the other spouse to bring an action for loss of consortium. 494 A.2d at 1315. Both of these cases were ruled on by a district court of a state whose state court later rejected the district court's holding:

> The exceptions are *Bulloch v. United States*, 487 F. Supp. 1078 (D.N.J. 1980) (construing N.J. law) and *Sutherland v. Auch Inter-Borough Transit Co.*, 366 F.Supp. 127 (E.D. Pa. 1973) (construing Pa. law). The *Bulloch* holding has been specifically rejected twice by the Superior Court of New Jersey, Appellate Division. *Leonardis v. Morton Chemical Co.*, 184 N.J. Super. 10, 445 A.2d 45 (1982); *Childers v. Shannon*, 183 N.J. Super. 591, 444 A.2d 1141 (1982). Both before and after *Sutherland*, Pennsylvania has rejected its rationale. *See Sartori v. Gradison Auto Bus Co., Inc.*, 42 Pa.D. & C.2d 781 (1967), and *Rockwell v. Liston*, 71 Pa.D. & C.2d 756 (1975).

The only significant exception to this rule is in cases where an injury resulting from an action or negligence before marriage is discovered during the marriage, and neither spouse knew nor should have known of the injury before the marriage. *See Green v. Amer. Pharmaceutical Co.*, 960 P.2d 912, 919 (Wash. 1998); *Vazquez v. Friedberg*, 636 A.2d 300, 302 (Pa. 1994). This exception arose because, in these special cases, the underlying rationales for denying loss of consortium were absent: the claimant was either no longer marrying a cause of action, or was not on notice that any injury had occurred at the time of the marriage and thus could not have assumed the risk associated with marrying a person with such an injury. For example, in *Green*, a woman sued a pharmaceutical company for negligence and failure to warn for administering DES (diethylstilbestrol) to her mother during pregnancy, which later caused the woman's uterus to develop abnormally and greatly complicated her pregnancy. 960 P.2d at 914. The woman knew she was exposed to DES but did not know about the abnormal development of her uterus until she received an X-ray four years after her marriage to her husband. The woman's husband added a loss of consortium claim, but the trial court dismissed it. *Id.* at 914-15. The Supreme Court of Washington reinstated the claim, holding that, because neither the woman nor her husband knew or should have known about her uterine complications at the time they were married, the husband had the right to damages for loss of consortium. *Id.* at 919.

Mr. Mason's claim does not fit this exception, based on both the rule itself and its reasoning. Mr. Mason should have known, if he did not outright know, of Mrs. Mason's fall before their wedding. Mrs. Mason fell on August 31, 2016, and the couple married on November 11,

---

Although this count is somewhat outdated, the Court is unaware of any shift in the national consensus that has occurred in the thirty-seven years since the *Stager* opinion was issued. In fact, the court in *Bransteter* more recently counted thirty-eight states as following the majority rule, nine (including the District of Columbia) as generally following the majority rule but allowing for the exception described in this order, and four as following the majority rule and rejecting any such exception. 579 F. Supp. 2d at 983-84.

2016. Docket No. 48, p. 1. Unlike with toxic exposure or cancer development where the cause of action could leave no recognizable harm until a thorough examination is performed, Mr. and Mrs. Mason should have known that she may require surgery or physical therapy to treat the injuries she suffered during the fall. Mrs. Mason testified during her deposition that she "wasn't moving very well" and "couldn't walk on [her] own" immediately after the fall. Docket No. 43-1, p. 17. As a result, the Court finds this case does not fit into the exception for dormant injuries.

Moreover, the policy concerns that discourage allowing loss of consortium claims for injuries sustained before marriage are present in this case. First, Mr. Mason's notice of Mrs. Mason's injury meant, when he married her, he assumed the risk of having to care for her in her injured state and suffering some harm to his finances and his career in the process. Although he argues that Mrs. Mason "began dealing extensively with the medical injuries she suffered as a result of her fall…*after* November of 2016" and that "she did not have her first surgery…until December 16, 2016," he knew or should have known of the of the cause of action: the fall. In the more-than two months' time between the fall and the marriage, Mr. Mason should have realized his wife would require at least some amount of care. The Court accordingly finds Mr. Mason assumed the risk that complications directly relating to that fall could arise after the wedding.

Similarly, Mr. Mason indisputably married that cause of action. Mr. Mason would likely respond that his marriage was planned and save-the-dates were mailed out before the fall, which proves he had no initial intention to marry a cause of action. The Court is sympathetic to the unfortunate timing of Mrs. Mason's injury and that, because of the commitments the couple made while planning their wedding, for all intents and purposes, Mr. Mason had little to no choice but to marry a cause of action. However, the Court cannot grant Mr. Mason a claim on the grounds that it sympathizes for the difficult position Mrs. Mason's fall placed the couple in.

This leads to the third policy preference, that "on social policy grounds, liability at some point must be delimited." *Stager*, 494 A.2d at 1315-16 (citing *Tong v. Jocson*, 76 Cal. App. 3d 603 (1977)). It is far more efficient and administrable to draw the line at the point of marriage. Imagine, for instance, the Court were to allow Mr. Mason's loss of consortium claim on the grounds that their marriage plans had progressed far enough to warrant the claim. When the next plaintiff, who post stamped his or her save-the-dates but not sent them, asserts a loss of consortium claim, on what grounds could a court differentiate this hypothetical plaintiff's claim from the case at bar? What about the plaintiff after that, who spent a fortune on down payments for his or her reception venue but had not prepared the invitations? Future courts would be left to waste time crafting increasingly arbitrary, likely inconsistent, rulings that are wholly unnecessary when such an elegantly simple, logical standard already dominates common law. For these reasons, the Court finds that Mr. Mason's loss of consortium claim should be denied.

### IV. CONCLUSION

The Court's explanation regarding its position on the issue of summary judgment is deliberately phrased. The undersigned cannot emphasize enough to the parties that the stage of litigation, not the facts of the matter, constrain the Court's order today. The parties may want to reconsider their respective positions on settlement because the summary judgment record suggests to the Court that either party could be successful at trial.

For the foregoing reasons, The United States' Motion for Summary Judgment (Docket No. 33) is **GRANTED** in part and **DENIED** in part.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**

20

Case 3:20-cv-00245   Document 56   Filed 07/20/22   Page 20 of 20 PageID #: 501